[620 NYS2d 448]

NATIONAL ASSOCIATION OF INDEPENDENT INSURERS et al., Respondents, v STATE OF NEW YORK et al., Appellants.

Second Department, December 27, 1994

APPEARANCES OF COUNSEL

*G. Oliver Koppell, Attorney-General,* New York City *(Frederic L. Lieberman, Rosalie Hronsky* and *August L. Fietkau* of counsel), for appellants.

*Stroock & Stroock & Lavan,* New York City *(Alvin K. Hellerstein, Martin Minkowitz, Edward P. Grosz, Mark Cheffo* and *Amanda Shechter* of counsel; *Howard Horowitz* on the brief), for respondents.

## OPINION OF THE COURT

O'BRIEN, J.

This appeal concerns a challenge to the constitutionality of Tax Law § 341 (hereinafter the statute), which changes the manner in which motor vehicle damage insurance awards are paid. The Supreme Court granted a preliminary injunction staying implementation of the statute based on a determination, *inter alia,* that its provisions would result in the double taxation of insurance claimants. We find that the claims regarding double taxation, when subjected to scrutiny, are largely speculative and do not overcome the strong presumption of constitutionality that attaches to a tax statute. After consideration of the plaintiffs' remaining challenges to the statute, we conclude that the defendants are entitled to summary judgment and a declaration that the statute is constitutional.

## I. The Statute

With the enactment of Tax Law article 15 (§ 341 [L 1991, ch 166]), entitled "TAX ON TRANSFER OF CERTAIN INSURANCE AWARDS", an insurance carrier that issues an award for damage to or theft of a motor vehicle is required to calculate the "tax component" of the award and to remit that amount to the State Commissioner of Taxation and Finance (hereinafter

the Commissioner) (Tax Law § 341 [b], [c] [1]). The "tax compo-nent" is defined as the amount equal to the State and local sales and use taxes which the claimant would be required to pay if the claimant used the entire amount of the damage award to purchase taxable property or services (Tax Law § 341 [a] [2]). It is calculated based on the higher of the sales tax rate of the locale where the claimant resides or where the vehicle is to be repaired (Tax Law § 341 [a] [2] [A]). Section 341 of the Tax Law changed the former practice of the insurance carriers, dictated by prior Insurance Department regulations and their own contracts, by which they were required to send an amount equal to the sales tax on the damage award directly to the claimant. Rather than receiving the sales tax in cash, the claimant is now to receive a credit voucher from the insurance carrier indicating the amount of the tax compo-nent which may then be used in lieu of paying sales tax if the vehicle is repaired or replaced within a year (Tax Law § 341 [d] [1], [2]). The statute, however, does not require a motor vehicle repair shop or dealer to accept the voucher (Tax Law § 341 [d] [2]; § 1132 [j]), and this alleged deficiency in the statute lies at the heart of the controversy.

Under certain circumstances, the tax component is not deducted from the damage award or, if initially deducted, may be refunded to the claimant. The tax component is not de-ducted from the damage award when the claimant is a non-New York resident and does not have the vehicle repaired or replaced in New York (Tax Law § 341 [c] [2]) or when the claimant repairs or replaces the vehicle before the carrier issues the damage award (Tax Law § 341 [c] [3]). A claimant is entitled to a refund of the tax component from the Commis-sioner if the vehicle is repaired or replaced in another State and sales tax is paid in that State (Tax Law § 341 [e] [1]) or if the claimant certifies to the Commissioner that the vehicle will not be repaired or replaced within one year (Tax Law § 341 [e] [2]).

All carriers which issue motor vehicle damage or theft insurance must register as sales tax vendors (Tax Law § 341 [f] [1]), and the provisions of Tax Law article 28 (sales and use taxes) apply to Tax Law article 15 to the extent that they are not inconsistent (Tax Law § 341 [f] [2]). Carriers are required to produce credit vouchers according to specifications issued by the Commissioner (Tax Law § 341 [d]), to keep and main-tain records, and to file returns in the form required by the Commissioner (Tax Law § 341 [f] [3], [4]). In order to imple-

ment the statute and its record-keeping provisions, the Commissioner issued emergency regulations pursuant to State Administrative Procedure Act § 202 (6). Those regulations subsequently expired (see, 20 NYCRR part 750). In addition, the Commissioner issued Publication 82 (credit voucher specifications) which included a sample form for the credit voucher and printing and security requirements.

## II. Preliminary Proceedings

The plaintiffs, 13 insurance carriers authorized to do business in New York and their trade association, commenced this action in 1991 against the State and the State Department of Taxation and Finance (hereinafter collectively the State) for a declaration that the statute is unconstitutional and for an injunction to prevent its implementation. More specifically, the plaintiffs contended that the statute interfered with their contractual rights vis-à-vis their insureds, effected a taking of private property for a public purpose, and violated the due process rights of claimants. In addition, they contended that the credit voucher specifications issued by the State (Publication 82) were promulgated in violation of the State Administrative Procedure Act.

The plaintiffs were granted a temporary injunction enjoining the State from implementing the statute pending determination of their motion for a preliminary injunction. The State cross-moved for summary judgment dismissing the complaint and for a declaration that the statute is constitutional and that the credit voucher specifications are valid. Upon consideration of the parties' respective motions, the Supreme Court rejected the majority of the plaintiffs' challenges to the statute's constitutionality. However, it determined that they were entitled to a preliminary injunction on the ground that the statute resulted in the impermissible double taxation of claimants and in the overpayment of taxes by carriers on behalf of claimants without the possibility of a refund.

In support of its determination that the statute resulted in double taxation, the Supreme Court concluded that since the statute did not require vendors to accept the credit vouchers, a claimant who used such a vendor would then have to pay the sales tax, even though the tax had already been remitted to the Commissioner by the carrier. Relying on the rule that the legislative intent to impose double taxation must be clear and will not be presumed (see, Sage Realty Corp. v O'Cleirea-

*cain,* 185 AD2d 188; *Socony-Vacuum Oil Co. v City of New York,* 247 App Div 163, *affd* 272 NY 668), and finding no clear intent here, the Supreme Court concluded that such double taxation was unlawful. Moreover, the court noted that the refund provisions in the statute did not specifically apply to circumstances where a vendor refused to accept the voucher and further concluded that the general refund provision in Tax Law § 1139 (a) would not apply. In view of the absence of a refund mechanism, the court found that the plaintiffs were likely to succeed on their claim that the statute violated substantive due process.

The Supreme Court also agreed with the plaintiffs' related argument that the statute would result in the excess payment of sales taxes by the carriers without the possibility of a refund. Because the statute requires the carrier, when remitting the tax component to the Commissioner, to calculate that amount based on the higher of the sales tax in the locale where the claimant resides or where the vehicle is to be repaired, the carriers might in some cases remit to the Commissioner a greater amount of tax than they would have been required to pay to the claimant for the actual repair.

Finally, the Supreme Court concluded that the credit voucher specifications were promulgated in violation of the State Administrative Procedure Act and were therefore invalid. The State was enjoined from implementing or enforcing the provisions of the statute, its regulations and specifications, and the State's cross motion for summary judgment was denied.

### III. Standing

■ Preliminarily, before reaching the merits of the plaintiffs' contentions, we note that the State argued in its cross motion papers that the plaintiffs did not have standing to raise contentions on behalf of claimants who are not parties to this action. We find that the State waived this argument by failing to raise it in its answer or in a pre-answer motion to dismiss *(see, Dougherty v City of Rye,* 63 NY2d 989; *Matter of Prudco Realty Corp. v Palermo,* 60 NY2d 656; CPLR 3211 [e]). In any event, the plaintiffs, as collectors of the tax and as the parties allegedly faced with overpayments, have a sufficient cognizable stake in the outcome of the action to contest the constitutionality of the statute *(see, Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *see also, Matter of Roosevelt*

*Raceway v County of Nassau,* 18 NY2d 30, 41, *appeal dismissed* 385 US 453).

## IV. Double Taxation/Overpayments

■ In reaching its conclusion that the statute results in double taxation and overpayments, the Supreme Court adopted the plaintiffs' view that the statute provided, in effect, for the prepayment of the sales tax. The State does not, however, concede this point. Rather, the parties have a fundamental disagreement as to the nature of the tax imposed by the statute which, if resolved in the State's favor, would eliminate any need to consider the issues of double taxation and overpayments.

At the core of the plaintiffs' argument that the statute results in double taxation and overpayments is the premise that the taxable event is the repair or replacement of the vehicle. The "tax component" of the damage award therefore is the sales tax, and the statute simply provides a mechanism for the prepayment of that tax directly to the Commissioner. We note that the plaintiffs do not contend that it is impermissible for the Legislature to require vendors, in general, to prepay sales tax *(see, e.g., Matter of Ames Volkswagen v State Tax Commn.,* 47 NY2d 345), but argue that here the statutory scheme leads to tax payments which are not limited to the tax actually due on the cost of the vehicle repair or replacement.

In contrast, the State does not view the tax imposed by the statute as a sales tax. Rather, the State urges that the statute imposes an entirely new tax, and the taxable event is the transfer of the damage award from the carrier to the claimant. The tax component is therefore a transfer tax which is separate from the sales tax paid when the vehicle is repaired or replaced. The fact that the statute permits a claimant to use the payment of the transfer tax as a credit against the sales tax when the vehicle is repaired or replaced does not transform the transfer tax into a sales tax. Consequently, because these are separate taxes, double taxation would not occur if a claimant was required by a vendor to pay the sales tax after the carrier paid the transfer tax to the State. Nor would overpayments occur if the transfer tax exceeded the sales tax on the actual repair.

Upon reviewing the provisions of the statute, as well as the legislative history, we conclude that the State's position in this regard is without merit and that the statute provides for

the prepayment of the sales tax. In addition to the fact that the tax component is calculated based on the sales tax rates in article 28 of the Tax Law, the situations in which the tax component is not deducted from the damage award indicate that the Legislature viewed it as a sales tax. The tax component is remitted to the Commissioner only if goods and services are to be purchased in New York. Moreover, the tax component is not remitted to the Commissioner if the vehicle is repaired or replaced before the damage award is issued, as in that instance the claimant will already have paid the sales tax. Insurance companies are required to register as sales tax vendors, and the provisions of article 28 of the Tax Law (sales and use taxes) apply except to the extent that they are inconsistent or irrelevant. Finally, the Assembly's Bill Memorandum Summary stated that the bill "addresses sales tax non-compliance by requiring that sales tax paid to auto insurance claimants be remitted by insurance carriers directly to the state". As noted by the Supreme Court, carriers typically add the sales tax to damage awards, and claimants "not untypically" will pay cash for the repairs to avoid the sales tax. We agree with the Supreme Court's conclusion that the Legislature's intent was to collect the sales tax from the source that it viewed as the most reliable party in such transactions, i.e., insurance carriers, and that the Legislature accomplished this aim by having carriers prepay the sales tax.

The use of the word "transfer" in the title is not dispositive, since the language of the statutory provisions determines the meaning of the act (see, People ex rel. Arcara v Cloud Books, 65 NY2d 324, 329, revd on other grounds 478 US 697; Squadrito v Griebsch, 1 NY2d 471, 475). Contrary to the State's contention, Tax Law § 341 (c) (5), which provides that the tax "is hereby imposed on the transfer of the damage award to or on behalf of a claimant entitled thereto", does not establish that this is a new "transfer tax", as that section merely determines when the tax is transferred to the Commissioner.

Having determined that the statute provides for the prepayment of the sales tax, we must now consider whether there is any validity to the plaintiffs' contentions that the statute violates due process because it subjects claimants to the double payment of sales tax on the same transaction or requires carriers, on occasion, to overpay the sales tax without the possibility of a refund.

It is well settled that legislative enactments are entitled to a presumption of constitutionality, and, while the presumption

is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt *(Alliance of Am. Insurers v Chu,* 77 NY2d 573, 585; *Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 71 NY2d 313, 319-320). Moreover, "[t]he Legislature has nearly unconstrained authority in the design of taxing measures unless they are utterly unreasonable or arbitrary" *(Matter of Ames Volkswagen v State Tax Comm.,* 47 NY2d, *supra,* at 349).

We find that the statute, on its face and in its intended operation, does not result in the double taxation of claimants. The Commissioner is paid the tax once, and the claimant receives a credit voucher in return to offset the sales tax which would normally be charged for the vehicle repair or replacement. We decline to base a decision on the statute's constitutionality on speculation that claimants will be unable to find vendors to accept the vouchers. As a practical matter, the carrier and/or the claimant can determine, when obtaining estimates, if a vendor will accept the voucher. Since the choice of vendor is in the control of the claimants and their carriers, any disadvantage caused by a vendor's failure to accept the voucher would be self-imposed and therefore should not render the statute constitutionally invalid *(see, e.g., Matter of Gasit, Inc. v Dugan,* 171 AD2d 325, *appeal dismissed* 79 NY2d 1040).

Similarly, we reject the plaintiffs' argument that the statute is unconstitutional because the tax withheld will have no relation to the true value of the transaction on which the tax is based, and carriers may be required to remit a higher sales tax to the Commissioner than is ultimately imposed by the motor vehicle vendor. We merely observe that the plaintiffs have the means, prior to issuing the damage award and remitting the tax component to the Commissioner, of determining the cost of the vehicle repair or replacement and the appropriate taxing jurisdiction. Furthermore, as previously noted, the Legislature has great latitude in designing its taxing schemes, and we do not find it arbitrary or unreasonable to base the tax rate on the taxing jurisdiction where the claimant resides or where the vehicle is repaired, depending on which is higher.

The plaintiffs further contend that the carriers will remit excessive taxes because a claimant may decide not to use the full amount of the damage award. However, carriers are presently obligated by their contracts and Insurance Regulation 64 *(see,* 11 NYCRR 216.6 [b] [2]) to include sales tax in

damage awards, even though claimants do not always use the entire damage award. We therefore do not find that the change imposed by the statute is unreasonable as it is intended to insure that the sales tax amount issued by carriers is actually remitted to the State.

Assuming, arguendo, that a claimant was forced to pay the sales tax twice because no vendor could be found to accept the voucher, we do not agree with the Supreme Court's determination that the remedy of a refund would not be available. The statute provides that the provisions of article 28 apply except to the extent that they are inconsistent. Tax Law, article 28, § 1139 (a), provides that the Commissioner "shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid." We find that it is premature, at this stage, to speculate, first, that a claimant will be unable to find a vendor to accept the voucher, and second, that such a claimant's request for a refund under Tax Law § 1139 (a) would be denied. A court should avoid interpreting a statute in a way that would render it unconstitutional if such a construction can be avoided *(Alliance of Am. Insurers v Chu,* 77 NY2d, *supra,* at 585). We therefore decline to interpret the statute as precluding, on its face, application of the refund provision in Tax Law article 28, § 1139 (a), to Tax Law, article 15.

## V. Remaining Constitutional Arguments

In light of our conclusion that the plaintiffs are not entitled to a preliminary injunction for the reasons set forth by the Supreme Court, we now turn to the question of whether any of their remaining arguments are of sufficient merit to warrant a denial of the State's cross motion for summary judgment.

■ The plaintiffs contend that the statute violates due process because it deprives them of property without just compensation. Specifically, they contend that the over-all cost to them of complying with the statute's voucher and record-keeping requirements will far outweigh the taxes collected and thus represents a taking of private property for a public benefit. We find this contention to be lacking in merit. When a taxing statute is enacted to raise revenue and not for any other purpose, "the due process clause may not * * * be availed of to condemn the statute. That clause, it has been said, 'is applicable to a taxing statute * * * only if the act be

so arbitrary as to compel the conclusion that it does not involve an assertion of the taxing power, but constitutes, in substance and effect, the direct assertion of a different and forbidden power, as, for example, the confiscation of property' " (Ampco Print.-Advertisers' Offset Corp. v City of New York, 14 NY2d 11, 24, appeal dismissed 379 US 5, quoting Magnano Co. v Hamilton, 292 US 40, 44; see also, Shapiro v City of New York, 32 NY2d 96, 102, appeal dismissed 414 US 804). We find no evidence that the statute was enacted for a purpose other than to raise revenue. The plaintiffs' argument is not persuasive in view of the fact that other businesses, no matter how small, are required to collect sales taxes and to maintain relevant records.

◼ The plaintiffs further contend that the statute impairs their contractual obligations in violation of the Contract Clause of US Constitution, article I, § 10. Because carriers are required by Insurance Regulation 64 (11 NYCRR 216.6 [b]) and their contracts to reimburse claimants for any sales tax paid, the plaintiffs assert that the situation may arise in which a carrier may have to pay the sales tax to the Commissioner and once again to the claimant because no vendor would accept the credit voucher.

In general, legislation will not be stricken as unconstitutional, even though it may interfere with existing contracts, if the legislation is " 'addressed to a legitimate end and the measures taken are reasonable and appropriate to that end' " (Matter of Department of Bldgs. [Philco Realty Corp.], 14 NY2d 291, 297; see also, Crane Neck Assn. v New York City/ Long Is. County Servs. Group, 61 NY2d 154, 167, cert denied 469 US 804; New York State Socy. of Enrolled Agents v New York State Div. of Tax Appeals, 161 AD2d 1, 9). The means used here of requiring direct payment to the Commissioner is a reasonable and appropriate measure to deal with the problem of sales tax evasion in motor vehicle repairs. In any event, we find that the plaintiffs' claim of harm in this regard is premature, as the State indicated that Regulation 64 would be amended in light of the statute, and is speculative, as it rests on the assumption that claimants will not be able to find motor vehicle vendors who will accept the vouchers.

Undoubtedly, as the plaintiffs contend, the insurance industry and regulations governing it are complex, and the imposition of the new system will initially create difficulties and uncertainties. Nevertheless, tax statutes, with their heavy presumption of constitutionality, should be upheld as long as

they bear a rational relationship to any legitimate State purpose *(see, Trump v Chu,* 65 NY2d 20, 25, *appeal dismissed* 474 US 915). The Legislature's determination to require that the sales tax be remitted by the carrier at the time the damage award is transferred, rather than when the repair is made, is rationally related to the legitimate State purpose of ensuring that the sales tax is efficiently collected on the repair and replacement of motor vehicles. We are not persuaded that any imperfections in the statute rise to a constitutional level.

## VI. Specifications

■ The final issue raised by the parties does not relate to the statute's constitutionality but to the validity of the credit voucher specifications issued by the State Tax Department. The Supreme Court concluded that these specifications were promulgated in violation of the rule-making procedures in the State Administrative Procedure Act and were therefore invalid. The court found that the specifications constituted agency rules and rejected the State's claim that the specifications were explanatory forms and instructions exempt from the rule-making procedures and filing requirements of State Administrative Procedure Act §§ 202 and 203.

State Administrative Procedure Act § 102 (2) (a) (i) defines a rule, in relevant part, as "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law * * * or the procedure or practice requirements of any agency". A rule is a fixed, general principle applied without regard to the facts and circumstances of the individual case *(see, Matter of Cordero v Corbisiero,* 80 NY2d 771, 772-773; *Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951). State Administrative Procedure Act § 102 (2) (b) (iv) excludes from the definition of a rule "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory".

In determining whether the credit voucher specifications can be properly characterized as merely explanatory forms and instructions, it is important to note that the statute provides that carriers are required to produce credit vouchers and stubs which are "serially-numbered, counterfeit-proof and non-transferable in accordance with specifications prescribed by the commissioner of taxation and finance" (Tax Law § 341 [d] [1]). Upon reviewing the specifications, we find that they

consist of explanatory statements and technical instructions for meeting these statutory requirements and, standing alone, are without legal effect *(see, e.g., Childs v Bane,* 194 AD2d 221, *appeal dismissed* 83 NY2d 846). The Supreme Court rejected the State's argument that the specifications had no legal effect on the ground that failure to comply with the specifications could result in penalties. We conclude, however, that the statements in the specifications regarding penalties were merely explanatory as the statute provides for the imposition of civil penalties for the failure to furnish a properly completed voucher and stub (Tax Law § 341 [f] [5]). Furthermore, rather than prescribing "fixed, general principle[s] to be applied by an administrative agency without regard to other facts and circumstances" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d, *supra,* at 951), the specifications indicate that the agency will be flexible in the manner in which the voucher and stub are produced.

We have not considered the plaintiffs' other arguments with respect to the administrative rules and regulations which are being raised for the first time on appeal *(see, Fresh Pond Rd. Assocs. v Estate of Schacht,* 120 AD2d 561, *lv denied* 68 NY2d 802).

## VII. Conclusion

■ We conclude that the plaintiffs have failed to overcome the strong presumption of constitutionality that attaches to the statute, and accordingly, grant the State's cross motion for summary judgment and declare the statute constitutional. Although the Supreme Court questioned the wisdom of the statute and noted the potential for misuse of the refund provisions, courts are not free to invalidate a statute because they disagree with its wisdom *(see, Rochester Gas & Elec. Corp. v Public Serv. Commn., supra; New York State Socy. of Enrolled Agents v New York State Div. of Tax Appeals, supra).* Our review is limited to determining "if any state of facts known or to be assumed, justifies the disputed measure" *(Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11-12). We conclude that the Legislature's concern regarding sales tax evasion in the repair of motor vehicles justifies the statutory scheme.

RITTER, J. (concurring in part and dissenting in part). Unlike my colleagues, I do not believe the plaintiffs here have standing to raise a constitutional challenge on the theory that

the statutory scheme they attack could hypothetically result in a double taxation upon claimants, who would be aggrieved by the refusal of a repair shop, or dealer, to accept a tax credit voucher. Thus, while I agree that the plaintiffs' complaint should be dismissed, I would not reach or address their constitutional challenge.

Standing is an element of the larger concept of justiciability. The tests employed to determine standing are designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to cast the dispute " 'in a form traditionally capable of judicial resolution' " *(Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761, 772). Standing analysis is, at its foundation, aimed at advancing the judicary's self-imposed policy of restraint, which precludes the issuance of advisory opinions *(see, Community Bd. 7 v Schaffer,* 84 NY2d 148, 155).

Although the defendants failed to raise the issue in their answer, or by way of a pre-answer motion to dismiss, this Court in *Matter of Daniel C.* (99 AD2d 35, 46, *affd* 63 NY2d 927), held that "lack of standing in the context of the constitutionality of a statute is not a matter for waiver by [the] parties, for it is the courts which must decide whether the parties have a sufficient stake in the litigation to necessitate constitutional adjudication" *(see also, Murray v State Liq. Auth.,* 139 AD2d 461).

In my view, there is no possibility that the plaintiffs will be aggrieved by the constitutional infirmity being pressed by them on this appeal. I note that there is no challenge by the plaintiffs to the Legislature's authority to require insurers to pay the tax component of a damage award directly to the State. Instead, they are purportedly asserting the due process rights of potentially aggrieved claimants who are unable to find a vendor willing to accept a tax credit voucher. There is no reason to believe that if a vendor refused to accept a tax credit voucher the claimant would be unable to obtain a refund from the State. Finally, if the State rejected the application for a refund, the claimant, genuinely aggrieved by the alleged constitutional infirmity at this point, would be the proper party to challenge the statute in the courts.

Reliance on *Matter of Roosevelt Raceway v County of Nassau* (18 NY2d 30) in support of the plaintiffs' assertion of standing in this case is misplaced. In *Roosevelt Raceway,* the plaintiff challenged a statute increasing the admissions tax it

was required to charge all patrons of its harness racetrack. The constitutional attack was based on an alleged equal protection violation grounded on the fact that the increased tax applied only to those facilities owned by the plaintiff, whereas all other racetracks in the State were governed by the lower admissions tax. Under the circumstances, the plaintiff was clearly aggrieved by the law, since its patrons had to pay the higher tax, and thus, the plaintiff had a sufficient stake in the litigation to assert standing. Here, by contrast, the plaintiffs have no cognizable stake in the outcome to warrant constitutional adjudication.

Under settled standing principles, those who challenge a statute as unconstitutional must demonstrate actual or threatened injury to a protected right, and that they have been aggrieved by the unconstitutional feature of the statute. Ordinarily, constitutional litigants cannot challenge a statute as it is applied to others (see, Matter of Daniel C., 99 AD2d 35, 42, supra, and cases cited therein). Since this is precisely what the plaintiffs are attempting to do here, I would simply reverse the order under review and dismiss their constitutional challenge on the ground that they lack standing to raise it. I would not go further at this time.

BRACKEN, J. P., and PIZZUTO, J., concur with O'BRIEN, J.; RITTER, J., concurs in part and dissents in part in a separate opinion.

Ordered that the order is reversed, on the law, with costs, the plaintiffs' motion for a preliminary injunction is denied, the defendants' cross motion for summary judgment is granted, and the matter is remitted to the Supreme Court, Kings County, for entry of a judgment declaring that Tax Law, article 15, § 341 is constitutional.