**Gregory L. PAYNE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–0507–CR–336.**

Court of Appeals of Indiana.

Dec. 6, 2005.

Transfer Denied Feb. 21, 2006.

---

John Pinnow, Special Assistant to the State Public Defender, Greenwood, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Gregory Payne appeals the fifty-year sentence imposed following his plea of guilty to Class A felony criminal deviate conduct. We affirm.

### Issues

The issues before us are:

I.  whether Payne's sentence is inappropriate; and

II. whether the trial court property calculated Payne's credit for time served prior to sentencing.

### Facts

On March 8, 2001, Payne was driving in South Bend when he saw seventeen-year-old R.W. and offered to give him a ride. R.W. accepted. Payne drove to a liquor store and purchased some alcohol, which he and R.W. drank. Payne then pulled onto a side street and he and R.W. began "fooling around . . . ." Tr. p. 41. R.W. told Payne that he wanted to stop, but Payne threatened to choke R.W. and forced him to submit to anal intercourse.

The State did not file charges against Payne until April 1, 2002, when it charged him with criminal deviate conduct as a Class A felony, criminal confinement as a Class B felony, and two counts of sexual battery as Class C felonies. Payne was charged simultaneously with two counts of child molesting as Class A felonies and one

count of Class C felony criminal confinement for a separate incident involving a thirteen-year-old boy. Meanwhile, on August 24, 2001, Payne was sentenced to three years incarceration for unrelated battery and resisting law enforcement convictions. He finished serving his sentence for these convictions on or near February 2, 2003, but he remained incarcerated awaiting trial in this case.

On July 21, 2003, Payne's jury trial was scheduled to begin. After voir dire, however, Payne agreed to plead guilty to the charges related to R.W.: Class A felony criminal deviate conduct, Class B felony criminal confinement, and two counts of Class C felony sexual battery. The State agreed to dismiss the child molesting and confinement charges related to the other child. The plea left sentencing entirely within the trial court's discretion.[1] On October 9, 2003, the trial court sentenced Payne to fifty years for the criminal deviate conduct conviction and eight years for each of the sexual battery convictions, all to run concurrently; no sentence was entered on the criminal confinement count. The trial court also gave Payne 262 days pre-sentencing incarceration credit. Payne now appeals the sentence and the credit time calculation.

## Analysis

### I. Appropriateness of Sentence

■■■ Payne contends the trial court abused its discretion in sentencing him and that his sentence is inappropriate; he only directly challenges the maximum fifty-year sentence imposed for the criminal deviate conduct conviction. When faced with a purely state law-based challenge to an enhanced sentence, as Payne makes, the first step is to determine whether the trial court issued a sentencing statement that (1) identified all significant mitigating and aggravating circumstances; (2) stated the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulated the court's evaluation and balancing of the circumstances. *See Hope v. State*, 834 N.E.2d 713, 717–18 (Ind.Ct.App.2005). If we find an irregularity in a trial court's sentencing decision, we may remand to the trial court for a clarification or new sentencing determination, or affirm the sentence if the error is harmless, or reweigh the proper aggravating and mitigating circumstances independently at the appellate level. *Id.* at 718. Even if there is no irregularity and the trial court followed the proper procedures in imposing a sentence, we still may exercise our authority under Indiana Appellate Rule 7(B) to revise a sentence that is inappropriate in light of the nature of the offense and the character of the offender. *Id.*

■■■ Payne first argues that the trial court did not give sufficient mitigating weight to his guilty plea. We observe, as Payne acknowledges, that the trial court did mention the guilty plea as a potential mitigator. However, after balancing it against Payne's criminal history and noting that the set of charges related to the other child had been dismissed in exchange for the plea, it did not assign the plea significant weight. This was not a case in which the trial court improperly failed to mention a guilty plea as having any possible mitigating weight. We con-

---

1. There appears to be no written plea agreement in this case. When Payne originally pled guilty, the State indicated that it would "make no recommendation as to sentencing." Tr. p. 9. However, at the sentencing hearing the trial court asked, "I trust that there was no limitation of the State's ability to argue. Or am I wrong?" Defense counsel responded, "No. The parties are free to argue, Your Honor." *Id.* at p. 88. The State then recommended a fifty-year term.

clude that the trial court's sentencing statement is adequate because it properly acknowledged Payne's guilty plea but explained why it did not give the plea substantial weight. *Cf. Francis v. State*, 817 N.E.2d 235, 238 (Ind.2004) (holding trial court's sentencing statement was inadequate because it failed to consider guilty plea a possible mitigating circumstance).

■ Although the trial court's sentencing statement is adequate, we still may revise Payne's sentence under Appellate Rule 7(B) if we find it to be inappropriate. *See Ruiz v. State*, 818 N.E.2d 927, 928 (Ind.2004) (reviewing appropriateness of sentence after holding trial court had followed proper procedures in pronouncing sentence). The State contends that Payne has waived any claim of inappropriateness because he pled guilty. It argues for a rule that a defendant who pleads guilty waives any Appellate Rule 7(B) challenge to a sentence, regardless of the nature of the plea. We cannot agree with the State.

In *Gist v. State*, 804 N.E.2d 1204 (Ind. Ct.App.2004), this court was asked to consider whether a ten-year sentence was appropriate for a defendant who had entered into a plea agreement that capped the maximum possible sentence for a Class B felony at ten years. A panel of this court held, "Where, as here, a defendant is sentenced in accordance with a plea agreement—an agreement he voluntarily entered into, we cannot say that the sentence is inappropriate." *Id.* at 1207. More recently, however, Judge Vaidik, who authored *Gist*, wrote for another panel of this court: "we conclude that a plea agreement calling for the parties to argue sentencing does not result in the offender waiving his right to complain about an erroneous sentence." *Eaton v. State*, 825 N.E.2d 1287, 1290 (Ind.Ct.App.2005). *Eaton* specifically concerned a trial court's obligation to state and weigh all significant mitigating and aggravating circumstances when imposing sentence and not whether the sentence was inappropriate. However, Judge Vaidik further explained, "*Gist* should not be read as establishing an absolute bar to an Appellate Rule 7(B) argument in guilty plea cases." *Id.* at 1289 n. 3. Instead, she opined that it is only when a plea agreement provides for a cap on sentencing that a defendant cannot subsequently complain that a sentence is inappropriate. *Id.* Thus, contrary to the State's argument, *Gist* does not support the broad waiver rule that it wants us to adopt in this case.

We conclude that where a defendant pleads guilty but sentencing is left entirely to the trial court's discretion, a defendant may challenge the appropriateness of the resulting sentence under Appellate Rule 7(B).[2] *See also Mast v. State*, 824 N.E.2d 429, 431 (Ind.Ct.App.2005) (reviewing sentence following guilty plea for appropriateness and holding "when the defendant's plea is open, there is no relevant distinction between a review of a sentence resulting from such a guilty plea and a sentence resulting from a conviction."). To hold otherwise would, in our view, contravene established Indiana Supreme Court precedent. The Court has held: "By contrast to the prohibition on appealing the trial's [sic] court's acceptance of a plea, a defen-

---

**2.** It is unnecessary to address in this case whether a defendant whose guilty plea places an express cap on sentencing below the statutory maximum may later challenge as inappropriate a sentence at or below the cap. We also observe that the Indiana Supreme Court has recently granted transfer in several cases decided by this court for the express purpose of addressing "the extent to which, if at all, a criminal defendant may appeal the propriety of his sentence following sentencing under a plea agreement . . . ." *See* Order Denying Transfer in *Nipper v. State*, No. 48A02–0501–CR–80, 833 N.E.2d 545 (Ind.Ct.App. Aug.10, 2005).

dant is entitled to contest the merits of a trial court's sentencing discretion where the court has exercised sentencing discretion ...." *Tumulty v. State*, 666 N.E.2d 394; 396 (Ind.1996). The *Tumulty* opinion then addressed whether the defendant's sentence was "manifestly unreasonable" under the predecessor to current Appellate Rule 7(B) after the defendant had pled guilty but left sentencing entirely to the trial court's discretion. *Id.* In light of *Tumulty*, we decline to follow a decision by another panel of this court, *Bennett v. State*, 813 N.E.2d 335, 338 (Ind.Ct.App. 2004), which concluded that anytime a defendant pleads guilty, he or she is barred from claiming on appeal that the sentence imposed is inappropriate, even if sentencing was left entirely to the trial court's discretion. Such a holding seems incompatible with *Tumulty. See also Mast*, 824 N.E.2d at 431 (declining to follow *Bennett* ).

Payne's plea agreement left sentencing entirely within the trial court's discretion. Thus, we will consider his argument that his sentence is inappropriate. "Ind. Appellate Rule 7(B) provides that we 'may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender.' " *Guillen v. State*, 829 N.E.2d 142, 149 (Ind.Ct.App.2005), *trans. denied.* We acknowledge that the "inappropriate" standard is "an authorization to revise sentences when certain broad conditions are satisfied." *Neale v. State*, 826 N.E.2d 635, 639 (Ind.2005). However, we do not believe that these conditions have been satisfied in this case.

We first consider the nature of this offense. Here, Payne enticed a seventeen-year-old young man, a stranger well below the legal drinking age, into his vehicle. After providing the victim alcohol to drink, Payne threatened to choke him to death if he did not submit to anal intercourse, which caused the victim extreme pain. We conclude that these facts support aggravation of Payne's sentence above and beyond a "normal" criminal deviate conduct case.

Next, we consider Payne's character. He has a criminal history consisting of felony convictions for the battery of a police officer and two counts of burglary. He has prior misdemeanor convictions for resisting law enforcement, public intoxication, and possession of paraphernalia. Most importantly for purposes of this case, he has a prior conviction for Class B felony criminal deviate conduct. He violated probation on his sentence for that offense and also admitted at the sentencing hearing in this case that he fought while incarcerated, thus resulting in an apparent loss of "good time" credit. He was incarcerated for this previous offense between 1987 and 1995, and committed all of the other offenses we have noted between 1995 and 2001. Payne has failed to demonstrate an ability to conform his conduct to the law's requirements for any period of time, even while under the close supervision of the Department of Correction. We conclude his criminal history deserves significant aggravating weight given the number and proximity in time of the previous offenses and the similar prior conviction for criminal deviate conduct.

Payne argues that his guilty plea should warrant a reduction of his sentence from a maximum fifty-year term. "[A] plea is not necessarily a significant mitigating factor." *Ruiz*, 818 N.E.2d at 929. We are mindful, however, that courts must carefully assess the potential mitigating weight of any guilty plea. For example, in *Cotto v. State*, 829 N.E.2d 520, 525–26 (Ind.2005), the Indiana Supreme Court held that a morning-of-trial guilty plea was

entitled to significant mitigating weight where the State did not directly dismiss any charges in exchange for the plea and the defendant submitted a four-page hand-written letter expressing remorse for his actions. In general, "A guilty plea demonstrates a defendant's acceptance of responsibility for the crime and extends a benefit to the State and to the victim or the victim's family by avoiding a full-blown trial." *Francis*, 817 N.E.2d at 237–38.

Here, Payne's guilty plea was not offered until after a jury had already been impaneled and, therefore, the State was not spared the substantial burden and expense of preparing for trial. As *Cotto* demonstrates, this does not necessarily remove all potential mitigating weight from a guilty plea. However, unlike in *Cotto*, the State here did dismiss several serious charges against Payne—two Class A felonies and a Class C felony—in direct exchange for the guilty plea. *See* Tr. p. 9. Thus, Payne did derive a substantial benefit by pleading guilty to these offenses.

The extent to which Payne's guilty plea represents true remorse is also debatable. Although Payne stated that by pleading guilty he wished to spare the victims from having to testify, it is not readily apparent that Payne grasped the seriousness of his crimes and his responsibility for it. He stated at the sentencing hearing, "I know that I did wrong and messed up. A lot of drinking led to a lot of silliness." Tr. p.

88. He also described what happened as a "mistake." *Id.* These statements appear to minimize his culpability for this offense and do not necessarily demonstrate full acceptance of responsibility for his actions. This also lowers the mitigating weight to be given to Payne's guilty plea.

In sum, although Payne's guilty plea might be entitled to some mitigating weight, it is minimal, and we cannot say that it necessarily outweighs the aggravating factors of the heinousness of this offense and the substantial evidence of poor character, including a prior conviction for an offense very similar to this one. We conclude that Payne's fifty-year sentence is not inappropriate.

## II. Credit Time Calculation

■ Payne next challenges the trial court's calculation of the credit to which he was entitled for his pre-sentencing confinement, or 262 days. Specifically, he contends he is entitled to credit from approximately the time that he was served with an arrest warrant for these charges, even though he was already incarcerated for another offense at that time and remained incarcerated for that offense for several more months. The trial court only granted Payne pre-sentencing confinement credit for approximately the time period he was confined after completing his sentence for the other offense.[3]

3. The timeline on this issue is very unclear. It appears that Payne began serving his sentence at Westville Correctional Facility for Class D felony battery on a police officer on August 24, 2001. The State charged Payne with the present offenses, and prepared an arrest warrant for them, on April 1, 2002. It is unclear when Payne was actually served with this warrant, although there is a notation of May 31, 2002, handwritten at the bottom of the warrant. Also, Payne apparently was transported to the St. Joseph Superior Court for a hearing on June 3, 2002, at which time a bond of $100,000 was set. It is also unclear when Payne completed his sentence for the battery offense. The presentence report calculated his release date as February 2, 2003; the offender information for Payne found on the DOC's website indicates that his release date for the battery was not until November 18, 2003; the trial court's award of 262 days credit when Payne was sentenced on October 9, 2003, would reflect a starting date for Payne's current sentence of January 20, 2003. Payne argues he is entitled to 557 days pre-sentencing credit, running from April 1, 2002, to October 9, 2003.

Indiana Code Section 35–50–6–3 provides that a person imprisoned for a crime or confined awaiting trial or sentencing earns one day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing. *See Stephens v. State*, 735 N.E.2d 278, 284 (Ind.Ct.App.2000). "Determination of a defendant's pretrial credit is dependent upon (1) pretrial confinement, and (2) the pretrial confinement being a result of the criminal charge for which sentence is being imposed." *Id.* If a person incarcerated awaiting trial on more than one charge is sentenced to concurrent terms for the separate crimes, he or she is entitled to receive credit time applied against each separate term. *Id.* However, if the defendant receives consecutive terms, he or she is only allowed credit time against the total or aggregate of the terms. *Id.*

Payne argues that because he did not technically receive "consecutive" terms for the battery and criminal deviate conduct sentences, nor would consecutive terms have been mandated by statute, the trial court should have awarded him full credit against both the battery and criminal deviate conduct sentences from the date of his "arrest" for the current offense. We disagree. It has been observed on several occasions that we should avoid construing the credit time statutes as permitting a defendant to claim "double or extra credit" for pre-sentencing confinement. *See Corn v. State*, 659 N.E.2d 554, 558 (Ind.1995) (quoting *Emerson v. State*, 498 N.E.2d 1301, 1302–03 (Ind.Ct.App.1986)).

Here, although Payne's sentences for battery and criminal deviate conduct did not run directly consecutive to each other, that is the practical effect of what happened. That is, Payne completely served his battery sentence before he began serving his criminal deviate conduct sentence; there simply was a gap of several months between the two. As such, we conclude that Payne would improperly receive "double or extra credit" if we permitted the period from approximately April 2002 to February 2003 to count against both his battery and his criminal deviate conduct sentences. Payne already earned and exhausted credit towards his battery sentence during that time period. Instead, this is a situation in which Payne should receive credit only against the aggregate of his battery and criminal deviate conduct sentences. The trial court effectively did just that when it calculated Payne's credit for pretrial confinement as running only approximately from the date he finished serving his battery sentence but remained confined on the present charges.

### Conclusion

We find no impropriety in Payne's sentence, and we conclude the trial court properly calculated the amount of pre-sentencing credit to which he is entitled. We affirm.

Affirmed.

NAJAM, J., and CRONE, J., concur.