ATTORNEY FOR APPELLANT
Eric K. Koselke
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Matthew D. Fisher
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 49S00-0501-CR-2

RONALD COVINGTON, JR.,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, No. 49G02-0206-MR-157363
The Honorable Robert R. Altice, Judge

_____

**February 14, 2006**

**Shepard, Chief Justice.**

Appellant Ronald Covington, Jr., challenges his sentence of life without parole for the 2002 murder of three people. He argues that his sentence was inappropriate and that Indiana's life without parole statute violates the Sixth Amendment. We conclude that imposition of the life sentence was appropriate. Our cases are *stare decisis* against him on the constitutional claim. We therefore affirm.

1

**Facts and Procedural History**

On June 1, 2002, Covington forced his way into the apartment of Maranda Wilson (the mother of his two children) by kicking in the front door. He began shooting the occupants of the apartment. Covington shot and killed Frederic Harris and Kevin Simmons who were visiting Wilson at the time. Covington then shot Jasmine West five times -- three times in the chest, once in the arm and once in the hand. The bullet that struck West's hand passed through the hand and hit her in the face, ultimately lodging in her neck. Covington then took Wilson into a back bedroom where he shot and killed her.

West remained conscious throughout the ordeal and survived by pretending to be dead. After Covington left, she managed to call the police. When officers arrived, they discovered three bodies -- Harris and Simmons in the living room and Wilson in a bedroom. These three individuals were pronounced dead at the scene. West was transported to a local hospital. During an interview with police several days later, West stated that Covington had shot her and the others. Based on that identification, and calls from Covington's parents suggesting his involvement in the crimes, the State charged Covington with three counts of murder, one count of attempted murder, and one count of class A burglary. On June 6, 2002, Covington surrendered to the police.

In September 2002, the State filed a death penalty request for the murders of Wilson, Harris, and Simmons. It alleged as aggravators that the murder of Wilson occurred during the commission of a burglary and that Covington committed multiple murders. See IND. CODE ANN. § 35-50-2-9(b)(1)(B), (b)(8) (West 2004).

On August 25, 2004, Covington entered into a plea agreement with the State under which the State withdrew its request for the death penalty in exchange for his pleading guilty to all counts. The agreement left the State free to seek life without parole based on the same aggravators charged in requesting the death penalty. During the guilty plea hearing, Covington admitted the material allegations of the charging information and established a factual basis for

the plea. The trial court rendered judgment on all counts, but entered the burglary conviction as a class B felony.

At the sentencing hearing, Covington introduced evidence of numerous mitigating circumstances, most notably: the contentious nature of his relationship with Maranda Wilson, the dysfunctional nature of his family life during childhood, his generally good behavior prior to the murders, a risk assessment produced by a corrections expert who concluded that Covington "would be completely harmless" after twenty-five to thirty years in prison, and the existence of several psychological disorders Covington claimed contributed to his actions. (Tr. at 37, 39, 60, 90, 110-11, 113, 142; Appellant's Br. at 13-14.)

Judge Altice entered a substantial and helpful sentencing order. He recognized certain mitigating factors, but declined to find others, particularly those that suggested Covington was not a risk to commit future acts of violence if his mental health issues were properly treated. The court concluded that it was too difficult to predict Covington's compliance with treatment outside of a structured environment. In the end, the court found that the statutory aggravators outweighed the mitigating circumstances and sentenced Covington to life without parole on the three counts of murder.

For the attempted murder, the court found as aggravation the repeated shooting of Jasmine West and Covington's actions in leaving her to die. It declared that the aggravators outweighed the mitigators and thus sentenced Covington to fifty years for attempted murder, and ten years for burglary, both to be served concurrently with the life sentence.

Covington appealed his sentence, arguing that the imposition of life without parole was inappropriate in light of the "nature of the offense and character of Mr. Covington" as well as the mitigating circumstances presented to the court, and that Indiana's life without parole statute violates the Sixth Amendment of the United States Constitution. (Appellant's Br. at 7-8.) Pursuant to Indiana Rule of Appellate Procedure 4A(1)(a) this Court has mandatory and exclusive jurisdiction over the appeal.

# I.  Covington's Sentence Was Appropriate

Covington's principal challenge to his sentence is that it is inappropriate in light of his character and the mitigating factors presented at sentencing.  He makes two separate arguments on this issue: that the court failed to assign appropriate weight to certain mitigators, and that it failed to find others.

A. Mitigating Circumstances Not Improperly Weighed.  Generally, the weight assigned to a mitigator is at the trial judge's discretion, and the judge is under no obligation to assign the same weight to a mitigating circumstance as the defendant.  Stevens v. State, 691 N.E.2d 412 (Ind. 1997).  We set aside a judge's weighing of aggravators and mitigators only if there is a manifest abuse of discretion.  Dunlop v. State, 724 N.E.2d 592 (Ind. 2000).

Covington first argues that the court failed to give adequate weight to the effect a dysfunctional childhood home life had on his actions, to his remorse, and to the effect of his mental health on his actions.  (Appellant's Br. at 13.)

The court did find that the defendant's dysfunctional home life as a child constituted a mitigating circumstance, but assigned little weight to it.  (Appellant's App. at 416.)  The court explained this conclusion by stating that although the defendant had witnessed episodes of domestic violence during his childhood, there was other "evidence that the Defendant's home environment was, for the most part, very stable."  (Id.)  Given this conflict, we conclude that the trial court could properly assign this mitigator little weight.

Covington also argues that the trial court failed to give significant weight to his expression of remorse for the murders.  (Appellant's Br. at 13.)  It was certainly proper for the defendant to show remorse, and the court did find this as a mitigator.  (Appellant's App. at 414.)  Such an expression does not necessarily compel a conclusion that Covington's regret outweighs the brutal nature of the killings.  Covington killed three individuals and attempted to kill a fourth.

4

One of those victims was the mother of his children and a woman with whom he had shared a long-term relationship. We cannot say the trial court erred in finding that the aggravators outweighed this mitigator.

Covington also argues that the court failed to assign sufficient weight to the mitigating circumstance of his mental health. (Appellant's Br. at 13.) At the sentencing hearing, Covington introduced evidence that he suffered from Delusional Disorder, Depressive Disorder NOS, Anxiety Disorder NOS, and Schizotypal Personality Disorder. (Appellant's App. at 378-87 (386 specifically listing diagnosis).) The trial court found that these disorders constituted a mitigating circumstance and that they had some impact on Covington's actions.

The American Psychiatric Association's definitions of mental illness, contained in the Diagnostic and Statistical Manual of Mental Disorders (presently "DSM-IV-TR") have continued to expand to the point that a recent study declared that about half of Americans become mentally ill and half do not.[1] This suggests the need for a high level of discernment when assessing a claim that mental illness warrants mitigating weight. In Weeks v. State, we laid out several factors to consider in weighing the mitigating force of a mental health issue. 697 N.E.2d 28 (Ind. 1998). Those factors include the extent of the inability to control behavior, the overall limit on function, the duration of the illness, and the nexus between the illness and the crime. Id. at 30.

In this case, the judge acknowledged that there was some nexus between the crime and the illness. He also cited evidence, however, that suggested that Covington was otherwise able to control his behavior and that the illness imposed little limit on his functioning. For example, the examining psychologist noted that Covington was able to discern right from wrong behavior, that he had developed an awareness of his own temper and would "get away from a situation" when he noticed his temper becoming uncontrollable, and that "unless subject to intense or prolonged stress or provocation" Covington would be "unlikely to behave in . . . a disorganized

---

[1] The National Comorbidity Survey Replication, conducted every ten years, found that 46 percent of Americans suffer or will suffer from mental illness during their lifetime. According to the survey, a third to a fifth of Americans will suffer from anxiety disorders, impulse control disorders, or mood disorders. Sadly, the survey also revealed that many Americans go undiagnosed and untreated for these disorders. Alex Barnum, Mental Illness Will Hit Half in U.S., Study Says, SAN FRAN. CHRONICLE, June 7, 2005.

and emotional fashion." (Appellant's App. at 384-85.) In light of this evidence, we are not persuaded that the court erred in assigning some, but not determinate, weight to Covington's mental condition.

B. Mitigators Not Improperly Disregarded. Covington also claims that the court failed to consider evidence regarding several mitigators, particularly the lack of his risk for recidivism. The evidence he presented on this point consisted of: his lack of prior criminal history; his generally good behavior prior to the crime and during his stay in the Marion County Jail while awaiting trial; the report of corrections expert James Aiken, who concluded he would be little risk in twenty-five to thirty years; and that with treatment his mental health issues would allow him to re-enter society safely. (Tr. at 65, 68, 72-73, 90, 142; Appellant's Br. at 13.)

The court addressed most of these mitigators in its sentencing order. For example, the court specifically found that Covington's insignificant criminal history was a mitigating circumstance. (Appellant's App. at 414.) However, here too the court concluded that it was of insufficient weight to outweigh the aggravators. (Id. at 417.) [2]

The other evidence was apparently introduced to demonstrate that the murders were a spontaneously one-time act, and that Covington's future behavior could be controlled through treatment of his mental health issues. The trial court sympathized with this argument, but did so conditionally. It noted that while Covington's mental health issues may be treatable, this required "the Defendant [to] be compliant with his treatment." (Appellant's App. at 416.) The court concluded that the evidence presented of Covington's apparent previous non-compliance with medical treatment for physical illness made it "too difficult to make an accurate prediction as to [his] future behavior." (Id.)[3]

[2] The court did not make mention of Covington's witnesses who testified about his generally good behavior before the murder. Given the court's careful consideration of other mitigators, and the weight of the aggravators, we are not persuaded that the trial court abused its discretion in not listing this as a mitigating circumstance, or that finding the mitigator would have had any measurable impact on the court's decision.

[3] The evidence of this is contained in the report of the psychiatrist who interviewed and diagnosed Covington. The report indicates that Covington sought treatment for a sexual dysfunction, but during the interview Covington indicated that he disregarded the treatment prescribed. (Appellant's App. at 380-81.) Covington made this denial even though the psychiatrist indicates that review of the medical records strongly suggests his compliance with the

Similarly, the court carefully considered the testimony of James Aiken, Indiana's former Commissioner of Correction, who testified that lifelong incarceration would likely not be necessary for Covington, and that Covington could likely be successfully reintegrated into society after twenty-five or thirty years. The court took note of this testimony, but again concluded that Covington's mental health issues and unpredictable compliance with mental treatment outside of the structured corrections environment made it "too difficult to make an accurate prediction" regarding him. (Appellant's App. at 416.)

Judge Altice's sentencing order clearly indicate that the trial court carefully considered the evidence about Covington's seemingly low risk of recidivism, but determined that this evidence was insufficient to demonstrate the defendant's contention. We cannot conclude that the trial court was wrong in refusing to find these mitigators.

Finally, Covington says the court should have found the contentious nature of his relationship with Maranda Wilson as a mitigating circumstance. (Appellant's Br. at 13.) Certainly there are occasions when a victim's own actions may be appropriately considered as a mitigating circumstance; however, as the court noted, this is not one of those times. The court stated, "while the relationship was certainly 'rocky' at times, the stress and dysfunction should not have resulted in the death of Miranda [sic] Wilson . . . [nor those of] Frederick [sic] Harris and Kevin Simmons as well as the attempted murder of Jasmine West. Each of these victims had nothing to do with that relationship." (Appellant's App. at 415.) We agree. Evidence heard at the sentencing hearing suggests Covington's relationship with Wilson had been "rocky" for years and that he had handled repeated moments of stress in the relationship without becoming violent. The court was not in error by refusing to find this mitigator.

All things considered, the trial court seems warranted in finding that three unprovoked killings outweighed the mitigating circumstances.

---

treatment plan. (Id. at 381.) The report also indicates that Covington was at one time prescribed Wellbutrin – apparently for the same physical condition – but insisted that he never took the drug, and indicated that in the past "he has vigorously opposed taking any pills that can alter your thinking." (Id. at 380.)

## II.     LWOP Does not Violate the Sixth Amendment

Covington argues that Indiana's statute on life without parole violates the Sixth Amendment because it does not require that the determination that the aggravating facts outweigh the mitigating circumstances be made beyond a reasonable doubt before the imposition of a sentence of life without parole.

As Covington rightly notes, we have already decided this issue adverse to his position.  In Ritchie v. State, we addressed a similar challenge to our death penalty sentencing scheme based on Apprendi v. New Jersey,[4] and Ring v. Arizona.[5]  809 N.E.2d 258, 264-68 (Ind. 2004) cert. denied, 126 S.Ct. 42 (2005).

We addressed this issue again in Pruitt v. State, 834 N.E.2d 90 (Ind. 2005), where we examined Indiana's death penalty in light of the U.S. Supreme Court's holding in Blakely v. Washington.[6]  Blakely reiterated the holding of Ring and Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Blakely, 542 U.S. at 301.  Blakely went further, however, by defining the term statutory maximum as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  Id. at 303.

Pruitt held that Blakely did not affect Indiana's death penalty statute since the "jury's determination of whether the eligibility factors outweigh any mitigating factors is not a finding of fact and it does not increase the penalty of the crime."  Pruitt, 834 N.E.2d at 112.

Although both Richie and Pruitt dealt with challenges to Indiana's death penalty, Indiana's death penalty provisions and life without parole option operate under the same framework.  See Ajabu v. State, 693 N.E.2d 921, 938 (Ind. 1998).  We have previously upheld

---

[4] 530 U.S. 466 (2000).
[5] 536 U.S. 584 (2002).
[6] 542 U.S. 296 (2004).

our life without parole statute in the face of challenges under <u>Ring</u> and <u>Apprendi</u> when, as here, the defendant pleads guilty. <u>Leone v. State</u>, 797 N.E.2d 743, 749-50 (Ind. 2003). Covington's arguments are substantially the same as those we considered in the foregoing cases, and they are *stare decisis* against him.

## Conclusion

We affirm the judgment of trial court.

**Dickson**, **Sullivan**, and **Boehm**, JJ., concur.
**Rucker**, J., concurs in Part I and concurs in result in Part II.