Travis **MARLETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A04–0703–CR–131.

Court of Appeals of Indiana.

Dec. 28, 2007.

Transfer Denied March 24, 2008.

Michael G. Moore, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Travis Marlett appeals his twenty-year sentence for Class B felony criminal confinement, as well as the requirement that he register as a sexual or violent offender and the finding that he is a sexually violent predator. We affirm in part, reverse in part, and remand.

### Issues

The State presents one cross-appeal issue, which is whether Marlett's appeal must be dismissed because his notice of appeal was not timely filed. The issues Marlett raises are:

 I. whether his sentence is inappropriate;

II. whether the sex and violent offender registry is unconstitutional as applied to him; and

III. whether there is sufficient evidence to support the determination that he is a sexually violent predator.

## Facts

On September 26, 2005, seventeen-year-old Marlett was attending school at Muncie Central High School. At approximately 8:45 a.m., he obtained a pass to leave his class and go to the nurse's office. He did not go straight to the nurse's office, and while walking the halls he saw fellow student L.A.V., who was sixteen years old, alone in a classroom. He then retrieved a knife from his backpack, entered the classroom, approached L.A.V. from behind, and put one hand over her mouth and placed the knife against her neck. He told her to be quiet or he would kill her, and he then cut L.A.V.'s neck. Marlett and L.A.V. struggled, and L.A.V. was able to take the knife from Marlett. A teacher soon intervened, who was able to hold Marlett until police arrived. The record is unclear as to the extent of L.A.V.'s injury or whether it was life threatening.

On September 29, 2005, the State filed a juvenile delinquency petition against Marlett. However, the State later sought and obtained Marlett's waiver into adult court. On May 12, 2006, it charged Marlett with attempted murder, Class B felony criminal confinement, and Class C felony battery. At the waiver hearing, extensive evidence was presented regarding Marlett's mental health. Specifically, a psychiatrist and a psychologist identified Marlett as having Asperger's Disorder, which is an autism spectrum disorder but not autism itself. Persons with Asperger's often develop obsessive interests, and Marlett has an obsessive interest in knives. Police recovered over fifty knives, swords, and machetes from Marlett's bedroom. Marlett's full scale IQ is approximately eighty-three, which places him in the bottom fifteen percent of the population.

On August 7, 2006, Marlett agreed to plead guilty but mentally ill to Class B felony criminal confinement. The State agreed to dismiss the attempted murder and Class C felony battery charges. Sentencing was left to the trial court's discretion. After being advised of the plea agreement, the trial court appointed a psychiatrist and a psychologist to examine Marlett and determine whether he should be classified as a sexually violent predator.

The trial court accepted the plea and conducted a sentencing hearing on December 1, 2006. It indicated that it found the nature and circumstances of the crime to be aggravating, and Marlett's lack of criminal history to be mitigating. It also stated, based on the reports of the doctors appointed to examine Marlett, that his mental illness made it likely that he would re-offend. It then proceeded to impose an executed term of twenty years. The court also found that Marlett was a sexually violent predator, based on the doctors's reports, and that he was required to register as an ordinary sex offender and as a sexually violent predator. Marlett now appeals.

## Analysis

### I. Timeliness of Notice of Appeal

We first address the State's cross-appeal issue that Marlett's notice of appeal was untimely filed, thus requiring dismissal of the appeal. The State previously filed a motion to dismiss, which the motions panel of this court denied. We are not precluded from reconsidering that decision. *See Davis v. State*, 771 N.E.2d 647, 649 n. 5 (Ind.2002). Nonetheless, we generally are reluctant to reverse a ruling of the motions panel unless it clearly erred as a matter of

law. *See Oxford Financial Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1141 (Ind.Ct.App. 2003).

■ Indiana Appellate Rule 9(A)(1) requires a party to file a notice of appeal, with the trial court clerk, within thirty days of a final judgment. "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided by [Post–Conviction Rule 2]." Ind. Appellate Rule 9(A)(5). This court lacks subject matter jurisdiction over appeals that are not timely initiated. *See Davis,* 771 N.E.2d at 648. Post–Conviction Rule 2(1) allows a criminal defendant seeking to purse a direct appeal from a conviction or sentence, but who failed to file a timely notice of appeal, to seek permission from the trial court to file a belated notice of appeal.

Here, Marlett was sentenced on December 1, 2006, and the thirty-day deadline for filing a notice of appeal began to run on that date. December 31, 2006, a Sunday, and January 1, 2007, New Year's Day, were both non-business days; thus, any notice of appeal was due to be filed on January 2, 2007. *See* Ind.App. R. 25(A) & (B). The trial court did not receive and file stamp Marlett's notice of appeal until January 3, 2007. Marlett never sought permission from the trial court to file a belated notice of appeal. Ordinarily, these facts might have required us to dismiss Marlett's appeal.

However, Marlett has provided documentation to this court that he mailed his notice of appeal to the trial court clerk, via United States Postal Service first class mail, on December 29, 2006. Indiana Trial Rule 5(F)(3) requires, in order for a filing by mail to be deemed to have occurred on the date of mailing, that the mailing be "by registered, certified or express mail." By contrast, Indiana Appellate Rule 23(A)(2) states, "All papers will be deemed filed with the Clerk when they are ... deposited in the United States Mail, postage prepaid, properly addressed to the Clerk...." Thus, under Trial 5(F)(3), Marlett's notice of appeal properly was deemed not filed until the trial court actually received it on January 3, 2007, because the mailing was not by registered, certified, or express mail, whereas under Appellate Rule 23(A)(2) the filing date would be deemed to be December 29, 2006, because that rule does not require mailing by the Post Office to be by registered, certified, or express mail.

■ We hold that, for purposes of determining the timeliness of a filing required by the Appellate Rules, the filing provisions of those rules trump those of the Trial Rules. It is true that "the Clerk" referred to in Appellate Rule 23(A) is the Clerk of the Supreme Court, Court of Appeals, and Tax Court. *See* Ind.App. R. 2(D). Nonetheless, in crafting the Appellate Rules a conscious decision was made that filings made by *any* type of United States Mail service would be deemed filed on the date of mailing, so long as postage was paid and it was addressed correctly.[1] The Notice of Appeal is a requirement of appellate practice, not trial practice. Applying Appellate Rule 23(A)(2) in this case would not undermine the goals of strictly enforcing time limits for notice of appeals, among which are to ensure the expeditious processing of appeals and to ensure the finality of judgments. We deem Marlett's notice of appeal to have been filed on December 29, 2006, or less than thirty days after he was sentenced. We decline to dismiss his appeal.

---

1. There is no indication here that proper postage was not paid or the notice of appeal was not correctly addressed to the trial court clerk.

## II. Sentence

 Marlett first challenges the imposition of a twenty-year sentence. We engage in a four-step process when evaluating a sentence under the current "advisory" sentencing scheme. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007). First, a trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.*

Marlett, who filed his brief before *Anglemyer* was decided, primarily claims the trial court abused its discretion in its weighing of aggravating and mitigating circumstances. As *Anglemyer* made clear, that no longer is a viable argument. We will proceed to consider whether Marlett's sentence is inappropriate under Appellate Rule 7(B) in light of his character and the nature of the offense.

 Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

 Marlett received the maximum possible sentence for a Class B felony, to be fully executed. *See* Ind.Code § 35–50–2–5. Maximum sentences ordinarily are appropriate for the "worst" offenders and offenses. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind.2002). This description refers generally to a class of offenses and offenders that warrant the maximum punishment. *Id.* Such a class may encompass a considerable variety of offenses and offenders. *Id.* We conclude, after reviewing Marlett's character and the nature of the offense, that he and his offense do not fall within the "worst" class and that a maximum sentence is inappropriate.

Regarding Marlett's mental health, which we believe fits into an overall assessment of his character, all four experts who examined him for this case agree that he has Asperger's Disorder, although a mild case of it. This disorder is life long and continuous. It is marked by difficulty with social interactions, but not severe communication problems as with autism. Additionally, persons with Asperger's may develop obsessive interests, as well as problems with anxiety. Marlett, in particular, was obsessed with knives at the time of the offense. One expert testified that there was a "strong possibility" that Marlett's obsession with knives might have been partially sexual in nature. Tr. p. 273.

Marlett also had a full scale IQ that placed him in the bottom fifteen percent of the population. Although his verbal skills are adequate, his non-verbal skills were described by one expert as being in the "almost mildly retarded range." Waiver Tr. p. 105. However, another expert described Marlett as "pretty highly functioning." *Id.* at 267. Marlett also is able to tell right from wrong.

 Our supreme court has held that there is a "need for a high level of discernment when assessing a claim that mental illness warrants mitigating weight." *Covington v. State*, 842 N.E.2d 345, 349 (Ind.

2006). This is because a recent study declared that nearly half of all Americans will be mentally ill at some point in their lives, as mental illness is defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. *Id.* Factors to consider in weighing a mental health issue include the extent of the inability to control behavior, the overall limit on function, the duration of the illness, and the nexus between the illness and the crime. *Id.*

Applying these factors to this case, there is no dispute that Asperger's is a lifelong disorder and that it negatively impacts Marlett's ability to have normal social interactions. This disorder also might have helped fuel Marlett's unhealthy obsession with knives. However, there is conflicting evidence in the record as to the extent to which the disorder limits Marlett's overall functioning. The record also is lacking in clear evidence of a direct nexus between Marlett's Asperger's and the commission of this particular crime. Taken as a whole, we cannot say that Marlett's mental health warrants overwhelming weight in an assessment of his character.[2]

 Also impacting an assessment of Marlett's character is the fact that he pled guilty. Courts must carefully assess the potential mitigating weight of any guilty plea. *Payne v. State,* 838 N.E.2d 503, 508 (Ind.Ct.App.2005), *trans. denied.* One factor to consider in determining such weight is whether the defendant substantially benefited from the plea because of the State's dismissal of charges in exchange for the plea. *See id.* at 509. The State argues, as it often justifiably does, that because other charges were dismissed here, Marlett received a substantial benefit from these dismissals and thus we are

urged to find that his guilty plea should not be accorded much, if any, mitigating weight.

It is true we have and will continue to cite dismissal of other, oftentimes more serious charges as a counterbalance to the mitigating weight of a defendant's guilty plea. It must be observed, though, that we are familiar with, accept as an integral and necessary part of the criminal justice system, and understand the practical necessity of plea agreements and the dismissal of charges pursuant to these agreements. Thus, although we understand that dismissal of charges often is a matter to consider, we should not and do not presume in all cases that the State would have been able to obtain a conviction on a charge that was dismissed as part of a plea bargain. Evidentiary hurdles, witness reluctance, and other legal impediments may make it both necessary and legally required for certain charges to be dismissed. In these instances, we think that the "benefit" to a defendant from a dismissal is not pronounced, if present at all. Although we will continue to look at the benefit derived by a defendant from the dismissal of other counts as part of a plea agreement, we will do so with a practical eye towards discouraging the obvious overcharging of defendants.

In some cases information from sources such as a probable cause affidavit, pretrial discovery, and the factual basis provided for a guilty plea may demonstrate that the State possessed substantial evidence that would have supported convictions for charges that were dismissed as part of a plea bargain. Such information is lacking here with respect to the attempted murder

---

**2.** Our conclusion necessarily is limited to the facts of this case. Different evidence in a different case might lead to a different conclu-sion with respect to a defendant suffering from Asperger's Disorder.

charge.[3] Also, as a legal matter, in some cases double jeopardy principles may have precluded convictions on multiple charges that were dismissed as part of a plea bargain. That potentially was the case here with respect to the Class C felony battery charge against Marlett. *See Stafford v. State*, 736 N.E.2d 326, 331–32 (Ind.Ct.App. 2000), *trans. denied* (holding double jeopardy principles precluded defendant from being convicted of both Class B felony criminal confinement and Class C felony battery where single act of using a deadly weapon supported both charges). We conclude that in the present case, the State has failed to persuade us that the dismissal of the attempted murder and battery charges entirely counterbalances the mitigating weight of Marlett's guilty plea to Class B felony criminal confinement.

 Marlett also lacks any criminal history. "[A] lack of criminal history is generally recognized as a 'substantial' mitigating factor." *Cloum v. State*, 779 N.E.2d 84, 91 (Ind.Ct.App.2002) (quoting *Loveless v. State*, 642 N.E.2d 974, 976 (Ind.1994)). A defendant's age also is highly relevant in determining the weight to be given to a defendant's criminal history or lack thereof—e.g., the longer a person has lived without accumulating a criminal history, the more substantial the mitigating weight. *See Rutherford*, 866 N.E.2d at 874. There was some evidence presented that Marlett previously might have engaged in questionable, possibly illegal, behavior, which could lower the mitigating weight of his lack of an official criminal record. *See Bostick v. State*, 804 N.E.2d 218, 225 (Ind. Ct.App.2004). As a juvenile, Marlett once was accused of resisting law enforcement, but no charges were filed. There also are allegations in the record that Marlett had

once broken into a car and stolen a wallet, and that he had once stabbed another student in the back with a pencil in the sixth grade. Marlett also apparently had a disciplinary violation while in jail awaiting sentencing in this case for allegedly attempting to sexually assault another inmate. Whatever Marlett's behavioral issues had been, however, they never rose to the level of requiring the criminal justice system to intervene. Although Marlett's lack of criminal history might not carry as much weight as it might have if his past behavior had been perfect, it still is mitigating.

Turning to the nature of the offense, we believe the facts of the case are egregious. Marlett attacked a fellow classmate during school. Making schools free from violence or the fear of violence clearly is an important societal concern. Additionally, Marlett not only confined L.A.V. while armed with a deadly weapon, which was all that was required to convict him of Class B felony criminal confinement. *See* I.C. § 35–42–3–3(b)(2)(A). He also used the weapon and slit her throat, which goes beyond what was necessary to support the conviction. It is not clear from the available record in this case whether the injury was life threatening, or the cut deep enough that it evidenced intent to kill or established serious bodily injury. Regardless, even if Marlett had not intended to kill L.A.V., he easily could have done so if he had accidentally cut her more deeply or in a slightly different location.

On the other hand, the period of confinement in this case appears to have been exceedingly brief, making it somewhat difficult to distinguish this case from what would have been Class C felony battery by means of a deadly weapon if there had

---

**3.** The charging information failed to allege that Marlett acted with specific intent to kill L.A.V., which is necessary to support an attempted murder conviction. *See, e.g., Kiefer v. State*, 761 N.E.2d 802, 805 (Ind.2002).

been no confinement. L.A.V. was able to stop the attack and take the knife from Marlett by herself. Thus, we decline to characterize Marlett's offense as belonging in the "worst" class that by itself justifies a maximum sentence.

 Several factors regarding Marlett's character weigh in his favor, including his poor (but not overwhelmingly so) mental health, his guilty plea, and his lack of official criminal history. However, we do not believe those factors are weighty enough to entirely counterbalance the egregious nature of the offense. Thus, we reject Marlett's request to reduce his sentence to a minimum term of six years. Instead, we reduce his twenty-year sentence to seventeen years. We also believe, given Marlett's mental health issues and the strong possibility that he may have difficulty transitioning directly from incarceration to freedom, that a period of probation is necessary. On this basis, we direct that two years of Marlett's sentence be suspended to supervised probation.[4] In other words, Marlett's revised sentence is fifteen years executed, plus two years suspended and served on probation, for a total of seventeen years.[5]

### III. "Sex Offender" Registration

Next, Marlett contests the requirement he will face when he leaves prison to register as a "sex or violent offender" on Indiana's Sex and Violent Offender Registry ("the Registry"). See I.C. ch. 11–8–8. He specifically challenges the inclusion of the crime he committed—criminal confinement of a person under eighteen years old—as an offense that requires registration. See I.C. § 11–8–8–5(a)(12).[6] We note that when Marlett was convicted and sentenced, Indiana only had a "sex offender registry" for enumerated "sex offenses." Between that time and now, the General Assembly amended the laws regarding the Registry so that it includes "violent" as well as "sex" offenses. See P.L. 216–2007, § 13. In addition to including clearly sexual offenses such as rape and child molesting, and less clear offenses such as kidnapping or criminal confinement of a minor, the Registry now also includes the offenses of murder and voluntary manslaughter. See id.

To the extent Marlett was claiming that he would be unfairly stigmatized by being placed on the "Sex Offender Registry" for committing a crime that did not have an overt sexual component, that claim is moot.[7] Marlett's crime could be character-

---

4. Our supreme court clearly has instructed that we may review not only the length of a defendant's sentence for appropriateness, but also placement or how that sentence is to be served. See Hole v. State, 851 N.E.2d 302, 304 n. 4 (Ind.2006). Additionally, the State requested to the trial court that part of Marlett's sentence be suspended to probation, although it requested a five-year probationary term.

5. This still exceeds the sentence requested by the State at the sentencing hearing, which was fifteen years total, with five years suspended to probation and ten years executed.

6. The Registry conforms to the requirements of the federal Jacob Wetterling Act, which provides federal funds to states to maintain

offender registries that follow the Act's minimum guidelines. See 42 U.S.C. § 14071. The Act requires the registration of persons convicted of committing a "criminal offense against a victim who is a minor," including "false imprisonment of a minor, except by a parent. . . ." See id. at § 14071(a)(3)(A)(ii).

7. At the outset of this appeal, the Indiana Civil Liberties Union sought permission to file an amicus brief challenging the constitutionality of the Registry as applied to Marlett. After the passage of Public Law 216–2007, the Union withdrew their request to file an amicus brief. We also hasten to note that Marlett does not argue that being classified as a sexually violent predator under Indiana Code Section 35–38–1–7.5 presents constitutional diffi-

ized as "violent," rather than "sexual." Additionally, the modification of the Registry after the date of Marlett's conviction and sentencing would not violate federal and state constitutional prohibitions against ex post facto laws. *See Spencer v. O'Connor,* 707 N.E.2d 1039, 1046 (Ind.Ct. App.1999), *trans. denied* (holding that original creation of Indiana's sex offender registry did not violate ex post facto prohibition in federal and state constitutions as applied to offenders convicted and sentenced before registry's creation).

 In any event, a number of courts from other jurisdictions have addressed whether it violates substantive due process to require a person to be placed on an offender registry for committing the equivalent of criminal confinement of a minor, which is the gist of Marlett's claim. In order to conform with substantive due process, a law that does not impact a fundamental right must only bear a rational relationship to a legitimate state interest. *See Mitchell v. State,* 659 N.E.2d 112, 116 (Ind.1995). Almost all courts that have addressed registration issues have found no fundamental right that is impacted by an offender registry. *See, e.g., People v. Cintron,* 13 Misc.3d 833, 827 N.Y.S.2d 445, 452 (N.Y.Sup.Ct.2006). Thus, they have reviewed substantive due process claims regarding offender registries under the rational relationship test. *See id.* at 453. Several courts have found requiring a defendant to be placed on an offender registry for committing the equivalent of criminal confinement of a minor to meet this rationality test. *See, e.g., id.* at 460; *In re Phillip C.,* 364 Ill.App.3d 822, 301 Ill.Dec. 791, 847 N.E.2d 801, 808 (2006), *appeal denied.* Marlett has not persuaded us to

reject these holdings, particularly in light of the fact that Indiana's Registry now includes "violent" as well as "sex" offenses. The Registry is not unconstitutional as applied to Marlett.

### IV. Sexually Violent Predator Finding

Marlett's final argument is that the trial court erred in labeling him a sexually violent predator ("SVP"). An SVP, among other more stringent requirements, must be on the Sex and Violent Offender Registry for life,[8] whereas an "ordinary" sex or violent offender is required to be on the Registry for ten years after being released from incarceration. *See* I.C. § 11–8–8–19. As with the Registry, the statute governing SVP determinations, Indiana Code Section 35–38–1–7.5, was changed substantially after the time of Marlett's sentencing. Some of the changes were necessary to reflect the replacement of the "sex offender" registry with the "sex and violent offender" registry.

At the time of Marlett's sentencing, Indiana Code Section 35–38–1–7.5(a) provided in part:

> As used in this section, "sexually violent predator" means a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly engage in any of the offenses described in IC 11–8–8–5. . . .

As noted in the previous section of this opinion, with the creation of the "sex and violent offender" registry, Indiana Code Section 11–8–8–5 was amended to include murder and voluntary manslaughter as registerable offenses. At the same time, Sections 11–8–8–5.2 and 11–8–8–4.5 were added to the Code. Section 11–8–8–5.2

---

culties. He only challenges the sufficiency of the evidence to support that determination, which we address in the next section of this opinion.

**8.** An SVP may later petition a trial court to have that designation removed under Indiana Code Section 35–38–1–7.5(g).

states, "As used in this chapter, 'sex offense' means an offense listed in section 4.5(a) of this chapter." Section 11–8–8–4.5(a) is almost identical to the list of "sex or violent" offenses in Section 11–8–8–5, except that it excludes murder and voluntary manslaughter. Sections 11–8–8–4.5 and 11–8–8–5 both list criminal confinement of a person under eighteen by someone other than a parent or guardian.

In light of these changes in Indiana Code Chapter 11–8–8, Indiana Code Section 35–38–1–7.5(a) was amended so that it now reads in part:

> (a) As used in this section, "sexually violent predator" means a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11–8–8–5.2) . . . .

Thus, the essence of this amendment is to allow for an SVP determination of anyone convicted of a crime that existed on the old "sex offender" registry, including criminal confinement of a minor, but not of a person convicted of murder or voluntary manslaughter, the two new offenses added to the "sex and violent offender" registry. Additionally, the SVP statute "applies whenever a court sentences a person . . . for a sex offense (as defined in IC 11–8–8–5.2) for which the person is required to register with the local law enforcement authority under IC 11–8–8." I.C. § 35–38–1–7.5(c).

The SVP statute, now and before, mandates an automatic SVP determination if certain criteria are met, including if a defendant is convicted of certain enumerated crimes or has one or more prior convic-

tions for another "sex offense." I.C. § 35–38–1–7.5(b).[9] Marlett does not meet the criteria for automatic SVP status, under either the old or new versions of the statute.

Where, as here, a defendant is being sentenced for a defined "sex offense" under Indiana Code Sections 11–8–8–5.2 and 11–8–8–4.5, or under the prior version of Indiana Code Section 11–8–8–5, and SVP status is not automatic, such status is determined by the trial court. There was a substantial change in the procedures for making a discretionary SVP determination that occurred after Marlett's sentencing. The previous version of Indiana Code Section 35–38–1–7.5(e) read in its entirety:

> If the court does not find the person to be a sexually violent predator under subsection (b), the court shall consult with a board of experts consisting of two (2) board certified psychologists or psychiatrists who have expertise in criminal behavioral disorders to determine if the person is a sexually violent predator under subsection (a).

With an emergency effective date of May 10, 2007, subsection (e) now reads in its entirety:

> If a person is not a sexually violent predator under subsection (b), the prosecuting attorney may request the court to conduct a hearing to determine whether the person (including a child adjudicated to be a delinquent child) is a sexually violent predator under subsection (a). If the court grants the motion, the court shall appoint two (2) psychologists or psychiatrists who have expertise in criminal behavioral disorders to evaluate the person and testify at the hear-

---

**9.** The enumerated offenses are rape, criminal deviate conduct, child molesting as a Class A or B felony, and various categories of vicarious sexual gratification. Additionally, Public Law 216–2007 added options for an automat-

ic SVP determination that did not exist previously. To counterbalance this somewhat, the new law also added subsection (h) to the SVP statute, which permits an exemption from automatic SVP status if several criteria are met.

ing. After conducting the hearing and considering the testimony of the two (2) psychologists or psychiatrists, the court shall determine whether the person is a sexually violent predator under subsection (a). A hearing conducted under this subsection may be combined with the person's sentencing hearing.

Thus, the changes in the procedures for labeling a defendant an SVP, who does not fall under the automatic SVP category, are significant and two-fold. First, a trial court no longer independently appoints and consults with two experts to determine whether a particular defendant is an SVP. Instead, the prosecutor, in the exercise of his or her discretion, must move the trial court for a hearing to determine whether a defendant is an SVP. Presumably, if no such motion is made, a trial court cannot sua sponte label a defendant an SVP if he or she does not fall under the automatic SVP provisions of subsection (b).

The second change is that there must be a *hearing* at which the two court-appointed experts *testify,* and a trial court's SVP determination must be based on a consideration of the experts' *testimony.* The previous subsection (e) of the SVP statute did not require a hearing, let alone the receipt of live expert testimony. Requiring live testimony will permit cross-examination of the experts and the adversarial testing of their conclusions. No longer can an SVP determination be made on the basis of paper reports, as was the case with Marlett. This represents substantially greater procedural protection to a defendant who is facing the lifetime stigma of being labeled an SVP.

Indiana lacks official legislative history records, so we cannot know with certainty what motivated the General Assembly to add these procedural protections to the SVP statute. We do know it has been held, by the United States Supreme Court and our supreme court, that requiring a convicted offender to be placed on a public registry, without affording the defendant a hearing to prove that he or she is no longer dangerous, does not violate the Due Process Clause of the United States Constitution or the Due Course of Law Clause of the Indiana Constitution. The basis of these holdings was that requiring registration solely on the basis of a prior conviction—as opposed to a determination of current or future dangerousness—did not necessitate a hearing separate from the proceeding that led to the conviction. *See Connecticut Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7–8, 123 S.Ct. 1160, 1164, 155 L.Ed.2d 98 (2003); *Doe v. O'Connor,* 790 N.E.2d 985, 989 (Ind.2003). Neither court has expressly held the opposite—that due process definitely requires a hearing when a registration requirement is based on a determination of current or future dangerousness—which is effectively what an SVP determination under subsection (e) is. Nevertheless, the General Assembly may have wished to avoid the potential for future procedural due process attacks against discretionary SVP determinations by adding the requirement of a hearing and live testimony by experts.

■ Turning to the particular facts of this case, the trial court appointed two experts—one psychiatrist and one psychologist—to examine Marlett and give their opinion as to whether he should be classified as an SVP. Both experts submitted reports to the trial court indicating that they had interviewed Marlett and gathered information about him through various methods, including from sources at the jail where he was awaiting sentencing and through psychometric testing. Both experts expressed the opinion that Marlett qualifies as an SVP as defined by statute. Marlett essentially contends that these opinions are too conclusory to support the

trial court's finding that he is an SVP. He also notes that the State did not call these experts to testify in person regarding their findings or to explain their reports.

Marlett's concerns regarding the conclusory nature of the reports and the failure of the experts to testify are valid, and appear to be addressed by the new version of Indiana Code Section 35–38–1–7.5(e). The first report concludes, "I, therefore, believe Mr. Marlett is at risk for repeating *the* offense and should be registered as a sexually violent predator." Appellee's App. p. 2 (emphasis added). This seems to imply that the doctor believes Marlett is at risk for repeatedly confining minors, which is the offense Marlett committed. However, the fact that Marlett confined a fellow high school classmate who was approximately the same age as him would not seem, by itself, to indicate such a propensity. Likewise, the second expert concluded, "it is my professional opinion that, after reviewing Court documents, interviews, and the results of psychological testing, Travis L. Marlett should be classified as a Sexually Violent Predator...." *Id.* at 5. The report fails to identify any specific crime or crimes that Marlett allegedly is at risk of repeatedly committing. More specificity would be especially helpful in a case like this, where Marlett did not commit an overtly sexual crime.

 A propensity for violence alone is not enough to warrant an SVP label. Even if Marlett had a propensity to violently batter or confine people generally, or commit violent crimes generally, that would not be enough to warrant an SVP determination. Furthermore, even if there is some evidence that Marlett is sexually aroused by knives and/or violence, that by itself does not establish that he is an SVP. There must be a propensity to commit one or more of the enumerated offenses in Indiana Code Section 11–8–8–4.5(a).

Although urging us to affirm Marlett's SVP designation, the State concedes that the evidence to support that finding is "not overwhelming...." Appellee's Br. p. 29. On the other hand, we do not wish to categorically reject that finding if indeed Marlett will be a threat to public safety when he is released from prison. We would feel more comfortable reviewing a ruling that was made following a hearing complying with the new version of Indiana Code Section 35–38–1–7.5(e)—*that is*, a hearing at which the experts who opined generally that Marlett is an SVP must testify and defend and explain their conclusions. We remand for the trial court to conduct such a hearing, after which *it may* reaffirm Marlett's SVP status or determine that he is not an SVP.

### Conclusion

We again reject the State's request to dismiss Marlett's appeal. We reverse his sentence and direct that it be revised to a term of seventeen years, with two years suspended to supervised probation; we remand for the trial court to modify *its* orders accordingly and to notify the Department of Correction and local probation department of this change. We affirm the requirement that Marlett be placed on the Registry after his release from prison. However, we remand for the trial court to reconsider Marlett's SVP status after conducting a hearing on the matter that complies with the current version of Indiana Code Section 35–38–1–7.5(e).

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., concurs.

BRADFORD, J., dissents with separate opinion.

BRADFORD, Judge, dissenting.

Although I concur with the majority's disposition of issues II and III and the State's cross-appeal, I must respectfully dissent, as I believe that a twenty-year sentence, in light of the nature of Marlett's offense and his character, is fully justified. The nature of Marlett's offense was a senseless and brutal attack that could very well have resulted in L.A.V.'s death had circumstances been slightly different. After approaching L.A.V. from behind, putting his hand over her mouth, and telling her that he would kill her, Marlett slashed her throat with a knife. The first person to come upon the scene noted that blood was "pouring" from L.A.V.'s neck. Whether or not Marlett intended to kill L.A.V., cutting a person's throat is very likely to produce that result. Moreover, there is no way to know what might have happened had Marlett not been discovered so quickly. Finally, Marlett's attack occurred in a school, where students expect (and *should be able* to expect) that they are safe. In my view, to the extent that Marlett's attack damaged that reasonable expectation of safety, that makes it all the worse.

As for Marlett's character, it is that of a violent and calculating predator who has also indicated an interest in future attacks. The record indicates that Marlett had been planning an attack of some sort (he did, after all, take a knife to school) and that he specifically timed it to occur before his eighteenth birthday, in the mistaken, as it happened, belief that he would be tried as a juvenile. Marlett told one supervisor at a juvenile detention center that he "just had to see if I could go through with it before I see my girlfriend in Indianapolis" and told another that he struck when he did because he thought he would only be incarcerated for one or two years as a result, as opposed to the twenty years he expected to face if he committed his crime as an adult. Waiver Tr. p. 41. Police found fifty to sixty knives, swords, and machetes in Marlett's bedroom. While in jail, Marlett had a magazine with pictures of knives and mutilated bodies and would say, "That is how I will do it next time[,]" while looking at them. Appellee's App. p. 1. Moreover, I see nothing in this record to indicate that Marlett's actions can be traced to his mental health issues. Regarding Marlett's "mild" form of Asperger's Disorder, the record indicates only that his dual obsessions, knives and reptiles, but not his violent tendencies, can be traced to it. Waiver Tr. p. 98–103, 243. Because I believe that Marlett's twenty-year sentence was fully justified, I respectfully dissent.